**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Crim. No: SAG-25-0347** |
| | * | |
| **ARSHAM RASHIDI DIZAJGAN,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

**\*\*\*\*\*\*\***

**MOTION TO REVIEW RELEASE ORDER AND**
**MOTION TO EXTEND STAY RELEASE ORDER PENDING REVIEW**

The United States of America, by and through undersigned counsel, respectfully moves pursuant to 18 U.S.C. § 3145(a)(1) for review and revocation of the December 23, 2025, Release Order issued in this case and further moves to extend the stay of the Release Order pending review by the District Court.

**PROCEDURAL POSTURE**

On November 12, 2025, a federal grand jury returned an indictment charging the Defendant, Arsham Rashidi Dizajgan, with six counts of transmitting in interstate or foreign commerce a communication containing a threat to injure the person of another, in violation of 18 U.S.C. § 875(c). ECF 1. The Federal Bureau of Investigation (FBI) arrested the Defendant in Gainesville, Florida on November 19, 2025. The Defendant had an initial appearance and detention hearing in the Northern District of Florida, and he was ordered detained pending trial. A copy of the detention order is attached as Exhibit 1. In particular, U.S. Magistrate Judge Martin A. Fitzpatrick found:

> Defendant's posts targeting specific victims with threats of murder, his comments celebrating jihad, current reclusive lifestyle, untreated mental health concerns, and previous actions showing an intent to carry out his threats all pose an extreme risk of danger to the community. His ties to foreign countries, recent travel

overseas, dual-citizenship, and lack of a release plan show a serious risk of flight or non-appearance.  No conditions of release could eliminate these risks.

For the reasons discussed, the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant were released prior to trial.  The Court also finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the Defendant's appearance as required.  The Government has met its burden and the motion for detention is GRANTED.

*Id.* at 4–5.

The Defendant had an initial appearance and a detention hearing in the District of Maryland on the afternoon of Tuesday, December 23, 2025.  ECF 11.  Over the government's objection, the Honorable Douglas R. Miller ordered the Defendant's release to home detention under the supervision of his parents in Arnold, Maryland.  ECF 13.  Judge Miller stayed the Release Order to allow Pretrial Services time to conduct a home visit and ensure that the conditions of release had been met, including removal of certain internet-capable devices from the home.  *Id.*  In light of the upcoming federal holiday and closure of the Court from December 24-26, 2025, Pretrial Services indicated that it would not be able to conduct the necessary home visit until Monday, December 29, 2025, at the earliest.  The Defendant remains in pretrial custody as of this filing.

Title 18, U.S.C. § 3145(a)(1) provides that, if a magistrate judge orders a defendant released, "the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order."  On the government's motion to review a release order, the court of original jurisdiction considers the denial of pre-trial detention *de novo*. *United States v. Clark*, 865 F.2d 1433, 1436–38 (4th Cir. 1989); *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001).

For the reasons discussed below, the Government respectfully moves pursuant to § 3145(a)(1) for *de novo* review and revocation of Judge Miller's Release Order and further moves to extend the stay of the Release Order pending review by the District Court.

**RELEVANT FACTS**

The Defendant is a 27-year-old dual citizen of the U.S. and Iran who, until recently, lived with his parents in Arnold, Maryland.  He graduated from the University of Maryland in 2023 with a Bachelor of Science degree in aerospace engineering.  At the time of his arrest, he was pursuing advanced studies at the University of Florida, and was living by himself in Gainesville, Florida.

Between roughly September 2024 and March 2025, while he was living with his parents in Arnold, Maryland, the Defendant used his TikTok account to post a large volume of pro-terrorist, anti-American, threatening content, including posts celebrating terrorist attacks against Americans and calling for jihad and the defeat of America.  During this same timeframe, the Defendant posted numerous photos and videos of Americans with upside-down red triangles over their heads, similar to the way the foreign terrorist organization Hamas has used upside-down red triangles to mark targets just before they are attacked.  The Defendant often added threatening comments to these posts.  Two TikTok users—both located outside Maryland—reported the Defendant to the FBI tipline, saying they believed he was a danger to others, and they felt threatened by him.  In particular, one user in Australia reported: "As a Muslim myself, judging by his content, I believe this individual could be a serious threat to his community."

**The Red Triangle Posts (*i.e.*, the Threats)**

The specific threats charged as Counts 1 through 6 of the Indictment are based on the following "red triangle" posts on TikTok:

- On November 17, 2024, the Defendant posted a video of his neighbor, Victim 1, standing outside her house.  The Defendant added an upside-down red triangle over her head and audio of someone speaking in Arabic.  The Arabic translates to "Die in your rage, America," which the government believes is a reference to a

3

prominent 2015 speech by ISIS spokesman Abu Muhammad al-Adnani, in which he called for "lone wolf" attacks against Western citizens.[1] ISIS is a designated foreign terrorist organization. The speech is referred to as the "Die in Your Rage" speech, and it did, in fact, become a rallying cry for ISIS-inspired terrorist attacks.[2] After the FBI warned Victim 1 about the post, she stated she felt very concerned for her safety, and she was attempting to break her lease so she could move out of the neighborhood.

- On December 7, 2024, the Defendant posted a photo of Victims 2 and 3 as they walked along a trail. The Defendant added upside-down red triangles over their heads and audio of someone speaking in Arabic. The FBI has sourced the Arabic to a YouTube video that quotes a letter by 7th-Century Muslim military commander Khalid ibn-al-Walid to the King of Persia, in which he famously said, "Either you surrender, or pay a tax, or it is war. I have brought you men who love death as much as your men love life."[3] Victims 2 and 3 recalled the photographing incident

---

[1] *See, e.g.*, Vanguard News, "ISIS threatens to intensify attacks against France," July 21, 2016, *available at* https://www.vanguardngr.com/2016/07/isis-threatens-intensify-attacks-france/ (last visited Nov. 6, 2025) (reporting that following the Bastille Day terrorist attack in France that killed 84, ISIS released a propaganda video that "features a quote from ISIS spokesman Abu Muhammad al-Adnani, in which he calls for Muslims to carry out lone wolf attacks against the West during what is known as the 'Die in Your Rage' speech").

[2] *See, e.g.*, U.S. Department of Justice, Press Release, "Man Sentenced to Life in Prison for ISIS-inspired Bombing in New York City Subway Station in 2017," Apr. 22, 2021, *available at* https://www.justice.gov/archives/opa/pr/man-sentenced-life-prison-isis-inspired-bombing-new-york-city-subway-station-2017 (last visited Dec. 28, 2025) (reporting that the 2017 NYC subway attacker's passport contained the handwritten statement, "O AMERICA, DIE IN YOUR RAGE," which was a reference to an ISIS propaganda video from which the attacker had drawn inspiration).

[3] *See* YouTube Kalamullah channel, "Khalid ibn al-Walids letter to the Persian King #islamichistory," Oct. 1, 2023, *available at* https://www.google.com/search?q=khalid+ibn-al-walid+famous+letter+to+the+persians#fpstate=ive&vld=cid:48acdd70,vid:74DLA89QtNg,st:0 (last visited Dec. 28, 2025).

and recalled feeling concerned for their safety at the time the Defendant photographed them, and they were even more concerned after learning of the post.

- On February 24, 2025, the Defendant posted a photo of Victim 4, a U.S. military veteran, as she walked along the sidewalk carrying an American flag. He added an upside-down red triangle over her head, audio in Arabic from the same ibn-al-Walid video, and comments including, "Just harassing the Americans [laughing emojis] Allah Akbar!!!" Upon learning of the post, Victim 4 was very concerned for her safety.

- On February 25, 2025, the Defendant posted a video of his next-door neighbor, Victim 5, as Victim 5 stood outside his house. The Defendant added an upside-down red triangle over Victim 5's head, audio in Arabic from the same ibn-al-Walid video, and the comment, "Abusing the Americans." (The same day, Dizajgan also commented on a separate live video, "Harassing the Americans to death.") Notably, around the same time as this post was made, Victim 5 filed a police report against the Defendant alleging that the Defendant drove aggressively toward him with his car. The case was eventually closed as "Nolle Prosequi." However, as will be discussed further below, during this same time frame the Defendant made at least one TikTok post in which he appeared to celebrate a terrorist attack using a car.

- On February 25, 2025, the Defendant posted a photo of Victims 6 and 7 as they walked their dog. He added upside-down red triangles over their heads, audio in Arabic translating to "Die in your rage, America," and comments including, "Gotta

teach them a lesson," and "look at these Zionists." (Victim 6 is, in fact, Jewish, and is also a U.S. Air Force veteran.)

- On February 27, 2025, the Defendant posted a video of Victim 2 as Victim 2 walked his dog. The Defendant added an upside-down red triangle and a laughing-face emoji over Victim 2's head and audio of a chant to Allah. Victim 2 recalled the encounter and recalled being concerned for his safety at the time the Defendant video-recorded him. Victim 2 was so concerned that he followed the Defendant and was able to take a short video of the Defendant's license plate, which he turned over to the FBI.

### Contextual Evidence of the Defendant's Intent to Threaten (and Intent to Carry Out His Threats)

In threats cases, context is important. And in this case, the context is illuminating. During the same period of time when the Defendant was making these red triangle posts, he was also celebrating and calling for violence against Americans and non-Muslims. To give just a handful of examples:

- The Defendant's profile names during the relevant time period included @aerospace_arsham and @muhajed_arsham. "Mujahid" is an Arabic term for a person engaged in jihad. The Defendant's profile page also included the text "Laden B1n," which is almost certainly reference to Osama Bin Laden, founder of the designated foreign terrorist organization Al-Qaida and mastermind of the 9/11 terrorist attacks.

- On October 3, 2024, the Defendant commented on a live video: "200 Americans unalived" and "Allah akbar."

- On October 18, 2024, the Defendant posted a video that included images of Al-Qaida 9/11 hijacker Mohamed Atta and news articles about the deaths of several American soldiers and civilians, with sounds of laughter playing in the background.

- On November 11, 2024, the Defendant commented on a live video: "America = kuffar" (*i.e.*, a derogatory term for non-believers) and "Do not take christians as allies."

- On November 19, 2024, the Defendant commented on a live video: "Ill stay here and fight the Americans," and "Jihad is very important."

- On November 20, 2024, the Defendant commented on a live video: "May Allah help us defeat America."

- On November 28, 2024, the Defendant posted a video that included a screenshot of a newspaper article titled, "Cybertruck kills college students after Tesla slammed into tree and caught fire."  The Defendant added audio in the background of a man shouting "Allah akbar! Allah akbar!" followed by crashing noises.

- On December 11, 2024, the Defendant commented on a live video: "Jew[s] and Christians are the enemy."

- On January 25, 2025, the Defendant posted a video of a news article about the Southport, United Kingdon terrorist attack that killed three children.  He added audio from the ibn-al-Walid video described above.

- On February 17, 2025, the Defendant commented on a live video: "I have good plans brothers...We will seek revenge based on what they have done to us...Inshallah...Just wait i have good plans bismillah...Im aware of fbi and cia so don't worry about me...Im not gonna say my plans...i kick cia butt...Follow the quran and they cant arrest you i have

experience...If Allah protects you no one can arrest you...I have years of experience fighting and they have not been able to arrest me...i have no fear...you just gotta be patient."

- On February 19, 2025, the Defendant commented on a live video, "I am soldier of Allah," "Muslims are the chosen people," and "We gonna finish what osama [*i.e.*, Osama Bin Laden] started so join us."

- On February 23, 2025, the Defendant commented on a live video: "Join islam so we defeat America," and "Just came back from harassing the Americans."

- On February 24, 2025, the Defendant commented on a live video: "Allah akbar!!!" and "Just came back from harassing the Americans."

- On March 10, 2025, the Defendant posted a photo of Al-Qaida 9/11 hijacker Mohamed Atta with the comment: "Shahid Mohamed Atta Rahim Allah," which is Arabic for "The martyr Mohamed Atta, may Allah have mercy on him."

In addition to these posts, many of the Defendant's posts celebrated Americans' deaths in aviation accidents, and some even explicitly linked the Defendant's studies in aerospace engineering to his goal of defeating America and its allies. For example:

- On October 1, 2024, the Defendant posted a photo of a news article about a plane crash in North Carolina that killed multiple people. He added the text "Allah akbar!!!!" and audio of laughter.

- On November 3, 2024, the Defendant posted a CBS News video of an airplane crashing into a crowd of people, along with the text "bro let me fly."

- On November 24, 2024, the Defendant posted a video of a stack of aerospace textbooks next to his laptop and notebooks, along with the text, "Competing with the Americans in the field of Aerospace."

- On November 25, 2024, the Defendant posted a video of himself praying in front of his University of Maryland diploma and a bookcase of aerospace textbooks, along with the text "Sunnah prayers = defeat America and its allies."  In the background, the Defendant added audio of air raid sirens, similar to those used by Israel to warn of missile attacks on population centers.

- On November 27, 2024, the Defendant posted a video of his laptop screen showing internet search results, along with the text "Looking up some research papers."  The search results included papers titled, "High angle of attack command generation technique and tracking control for agile missiles," and "High angle of attack landing of an unmanned aerial vehicle."

- On December 7, 2024, the Defendant posted a video of himself praying in front of his University of Maryland diploma and a bookcase of aerospace textbooks, along with the text, "6 days until the defeat of America."

- On January 7, 2025, the Defendant posted an Iranian propaganda video featuring a military parade of the Islamic Revolutionary Guard Corps (IRGC) Aerospace Force.  Portions of the accompanying English text translation read, "Death to America! . . . Death to Israel! The heroes of the IRGC Aerospace Force are ready to demonstrate their strength … We will trample America underfoot."  In the video, the IRGC Aerospace Force showcased Iran's new ballistic missile systems.  The IRGC is a designated foreign terrorist organization.

- On March 8, 2025, the Defendant posted screenshots of news stories showing the victims of the January 29 midair collision between a passenger jet and a United States military helicopter in Washington, DC, which killed 67 people.  The Defendant added laughing-

face emojis and the letters "RIH," which can stand for "Rot in Hell," along with audio of laughter. That same morning, the Defendant posted a video of Al-Qaida 9/11 hijacker Mohamed Atta.

There is additional evidence that the Defendant understood that Hamas uses the red triangle symbol to mark targets for attack and intended that his "red triangle" posts would be received as threats. For instance, his TikTok posts indicate an ideological alignment with Iran against the U.S. and a familiarity with the way in which Iran supports Hamas. Specifically, on December 2, 2024, the Defendant commented on a live video: "Iran is mad because Assad is losing." He added Arabic text that translates roughly to "Iran's axis is being destroyed," followed by English text, "Houthis hezbollah hamas assad." In other words, the Defendant understood that Iran was "mad' because its terrorist proxies—including Hamas—were being defeated. Furthermore, search warrant returns for the Defendant's Google account show that on July 30, 2025, the Defendant used YouTube to watch a propaganda video in which Hamas used red triangles to mark Israeli targets just before they were attacked.

## June 2025 Interview with the FBI

On June 10, 2025, the FBI interviewed the Defendant at his parents' house in Arnold, Maryland, in the presence of the Defendant's father, Abbas Dizajgan. The Defendant confirmed that he was the user of the TikTok account in question but refused to state what he thought it meant to place an upside-down red triangle over someone's head. He claimed he did not want to hurt Israelis or Jews. When asked whether he has ever looked up how to build a bomb, the Defendant initially said he did not remember, but then he claimed he had done so for educational purposes but not for the purpose of building a bomb.

The Defendant said he was diagnosed with schizophrenia and had been taking medication, but he stopped taking it because it was making him feel anxious. He also said he had been seeing a therapist, but he had not seen the therapist in over a month. He said he had not left his house or seen anyone outside the house in three weeks, and he had not spoken to his father in ten days because of an argument they had about religion.

Shortly after the interview, the Defendant deleted his TikTok account. A few days later, Abbas Dizajgan reached out to the FBI on his son's behalf and said that any further communications should be routed through their lawyer. As a result, the FBI was not able to ask follow-up questions about the Defendant's mental health status or treatment plan.

## The Defendant's Purchase of an AR-15

During the June 2025 interview, the Defendant told the FBI that he did not have any weapons. However, subpoena returns from Bank of America for the Defendant's bank account show that he made a $1,113 purchase at Hanover Armory in January 2021. The FBI spoke to an employee of Hanover Armory, who confirmed that the Defendant purchased an AR-15 style rifle on January 25, 2021, but returned it several hours later. It is not clear why the Defendant returned the weapon. However, his intent in purchasing the weapon was almost certainly not a good one. The FBI is not aware of any evidence that the Defendant engages in hunting or target-shooting, for example. The purchase is evidence that the Defendant at one point had the intent to carry out some kind of mass shooting. It certainly establishes that he has the wherewithal to purchase a high-capacity semi-automatic weapon if he chooses to carry out any of his threats in the future.

## Arrest and Subsequent Developments

At the time of the Defendant's arrest, the FBI seized and searched his cell phone pursuant to a federal search warrant. The phone showed that the Defendant had at least one active TikTok

account with display name @kuffar_destroyer. As noted above, "kuffar" is a derogatory term for nonbelievers. The account showed posts of a similar nature to the ones discussed above, namely, a post about Victim 5, and a post about the UPS cargo plane crash in Kentucky on November 4, 2025, which killed 15 people. The FBI was not aware of this TikTok account prior to the Defendant's arrest.

The Defendant was interviewed by Pretrial Services in the Northern District of Florida prior to his initial appearance there. As reported in Judge Fitzpatrick's Order of Detention:

> Defendant barely participated in the interview with Pretrial Services prior to the hearing. He would not disclose basic information like his parents' names, his relationship status, and other family ties. There is also evidence to suggest Defendant was not truthful with Pretrial Services in other areas of the report, specifically his mental health history. While he told Pretrial Services today that he had no past or present mental health issues, he told the FBI in June that he had a history of schizophrenia, had not seen his therapist in months, and hadn't been taking his medication.

Exhibit 1, at 2–3.

On November 20, 2025, the FBI called the Defendant's father, Abbas Dizajgan, to notify him that his son had been arrested. In the phone call, Abbas Dizajgan told the FBI that he was concerned about his son because he has schizophrenia.

In a jail call on November 20, 2025, at approximately 2:19 p.m., the Defendant spoke to his father in Farsi. Audio of the call has been turned over in discovery. An FBI linguist who speaks Farsi reviewed the call and reported the following: "His father instructs him to claim he has been seeing therapist and psychiatrist for four years now. Also, to tell them he has been using medicine for three years. He reminds him not to tell them he hasn't. His father emphasizes this is very important. This helps him to be released sooner."

Notwithstanding this instruction, during the interview with Pretrial Services in the District of Maryland on December 23, 2025, the Defendants' parents stated that the Defendant "has no

history of mental health concerns, nor history of seeing a mental health professional." Pretrial Services Report, at 2. The Defendant himself told Pretrial Services that he "does not feel as if he suffers from mental health concerns," although he noted that his father believed he was depressed and had him see a therapist during his last two trips to Iran. *Id.*

## <u>ARGUMENT</u>

As a threshold matter, the government is moving for detention under 18 U.S.C. § 3142(f)(2) because this case involves (a) a serious risk that the Defendant will flee; and (b) a serious risk that the Defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

This is a case involving threats to murder ordinary American citizens going about their daily lives. Two of the victims (Victims 1 and 5) are the Defendant's immediate neighbors, who are prospective witnesses in the case. The Defendant threatened Victim 2 *twice* on a trail near his home. There is a serious risk that the Defendant will continue to threaten and intimidate the victims or other members of his community, as he has done in the past. After the FBI interviewed the Defendant in June 2025, he deleted his TikTok account and created a new account where he continued posting threatening content, including a photo of his next-door neighbor, Victim 5. That account was undetected by FBI until the Defendant's recent arrest in November.

Furthermore, the Defendant has both a U.S. Passport and an Iranian Passport and has traveled abroad extensively, including recent trips to Iran in May 2024 and Saudia Arabia in December 2024. Although there is nothing wrong with having dual citizenship or traveling abroad *per se*, the Defendant has made TikTok posts indicating that he supports the Iranian Revolutionary Guards Corps (IRGC)—a designated foreign terrorist organization—in defeating America and its allies. His professed alignment with Iran against the U.S. creates a serious risk that he will flee to

a country that he views as more hospitable to him and that does not have an extradition treaty with the U.S.

At the detention hearing on December 23, 2025, Judge Miller agreed that the government had met its threshold burden under § 3142(f)(2) in order to move for detention.

If the Court agrees, the question next becomes "whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community," pursuant to 18 U.S.C. § 3142(g).  The § 3142(g) factors include: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The government respectfully submits that all of the § 3142(g) factors weigh strongly in favor of detention.  ***First***, the nature and circumstances of the offense are extremely serious, involving threats of a terroristic nature, that is, threats to murder ordinary American citizens for political or religious purposes.  The context surrounding these threats—including the Defendant's posts glorifying terrorist attacks against Americans and non-Muslims, the purchase of an assault rifle in 2021, Victim 5's allegation that the Defendant drove his car aggressively toward him, and the Defendant's long-term pursuit of a course of study (aerospace engineering) for the avowed purpose of defeating America and its allies—all demonstrate the Defendant's intent and ability to carry out his threats.

***Second***, the weight of the evidence is very strong.  The Defendant posted these threats on his own his TikTok account.  Business records from TikTok show that the account was subscribed

to in the Defendant's name, and there were selfie-style photos and videos of the Defendant posted to the account.  In the interview with FBI in June, the Defendant admitted to operating the account.

The evidence of the Defendant's intent to communicate threats is also very strong.  The red triangle posts were accompanied by audio alluding to ISIS's call for lone-wolf terrorist attacks and comments such as "abusing the Americans" and "gotta teach [these Zionists] a lesson."  During the same period of time in which he made the red triangle posts, he also celebrated and called for violence against Americans and non-Muslims.  He also deleted his TikTok account shortly after the FBI interview, which is evidence of a guilty conscience.  Furthermore, evidence from his TikTok and Google accounts indicates that he was ideologically aligned with Hamas and familiar with the way in which Hamas uses the red triangle to designate targets before they are attacked.

It is important to note that a threatening communication "does not have to be given or sent directly to the threatened individual to be a true threat."  *United States v. White*, 670 F.3d 498, 513–14 (4th Cir. 2012); *see also United States v. Lockhart*, 382 F.3d 447 (4th Cir. 2004) (upholding a conviction under a different threat statute after the defendant delivered a letter to a grocery store threatening to kill the President); *United States v. C.S.*, 968 F.3d 237, 244–45 & n.5 (3d Cir. 2020) ("The threat need not be transmitted to the threatened individual.  Rather, 'in the age of social media … the recipient of the communication may be a defendant's Facebook followers or even the general public.'") (quoting *United States v. Elonis*, 841 F.3d 589, 597 n.7 (3d Cir. 2016), *cert. denied*, 583 U.S. 816 (2017)); *United States v. Khan,* 937 F.3d 1042, 1049 (7th Cir. 2019) (upholding § 875(c) conviction based on threats made on Facebook, and approving jury instruction that "A threat does not need to be communicated directly to its intended victim").  All that is necessary is that (1) "the defendant knowingly transmitted a communication in interstate or foreign commerce"; (2) "the defendant subjectively intended the communication as a threat"—

that is, the defendant transmitted the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat, or perhaps, with reckless disregard for the likelihood that the communication will be viewed as a threat"; and (3) the communication "contained a 'true threat' to kidnap or injure"—that is, one that "an ordinary, reasonable recipient who is familiar with the context in which the statement is made would interpret … as a serious expression of an intent to do harm." *United States v. White*, 810 F.3d 212, 220–21 (4th Cir. 2016) (quoting *United States v. Elonis*, 575 U.S. 723, 741 (2015)).

Here, there is no question that the Defendant knowingly communicated his threats to a wide audience of TikTok users, and indeed, at least two TikTok users reported his posts to the FBI as threatening. The evidence demonstrates that the Defendant transmitted his communications for the purpose of issuing threats, or with knowledge that the communications would be viewed as threats. *See Elonis*, 575 U.S. at 741. It is immaterial that the Defendant did not send the threats directly to the intended victims. *See, e.g.*, *White*, 670 F.3d at 513–14. That is particularly the case where, as here, (1) the Defendant threatened *specific* individuals using their images; (2) it was reasonably foreseeable that the threatening communications would make their way to the intended victims via other TikTok users or law enforcement, as they did; and (3) the victims quite reasonably viewed the communications as very threatening.

***Third***, the Defendant's history and characteristics as a whole demonstrate a high risk that he will mobilize to violence, flee, destroy evidence, or threaten victims. Although the Defendant does not have any criminal convictions, he was charged with Second-Degree Assault in early 2025 based on Victim 5's report that the Defendant drove his car aggressively toward him. That charge was later dismissed, but the government anticipates calling Victim 5 as a witness at trial. Second, there is evidence that the Defendant has untreated mental health issues *and* that he has not been

truthful with the court about his mental health issues.  As discussed above, in his June interview with FBI, the Defendant stated that he had been diagnosed with schizophrenia and was not taking his medication or seeing a therapist.  His father also told the FBI that his son had schizophrenia. But in the Defendant's interviews with Pretrial Services, he denied any mental health concerns. Third, the Defendant has been living an extremely reclusive lifestyle, and, based on his own report to the FBI, he has a history of estrangement from his parents.  Fourth, the Defendant has a history of purchasing an assault rifle, and he admitted to the FBI that he has looked up how to build a bomb (although he claimed it was for educational purposes).  And fifth, his posts display a troubling level of sophistication, planning, and counter-surveillance.  He has spent years pursuing a course of study for the professed goal of defeating America and its allies.  He has made numerous comments about his plans to wage jihad against Americans, Jews, and Christians, whom he perceives as enemies.  Of particular concern was his comment in February 2025 that he has "good plans" to "seek revenge"; that he is "aware of fbi and cia" and knows how to avoid being arrested; and that he is biding his time and being "patient."

_**Fourth**_, the danger to the community is as high as it can be.  Based on the nature of the Defendant's posts, his history of purchasing an assault rifle, his neighbor's allegation that he drove his car aggressively toward him, his self-reported schizophrenia, non-compliance with treatment, and inconsistent statements about his mental health issues over time, his reclusive lifestyle, his history of estrangement from his family, and his long-term pursuit of a course of study for the stated purpose of bringing harm to the U.S., there is an intolerably high risk the Defendant will carry out a mass casualty attack and an urgent need to protect the public from him.

_**Finally**_, the conditions of release set forth in Judge Miller's release order do not adequately mitigate the serious danger the Defendant poses to the community or risk that he will flee or

intimidate victims.  The Release Order directs that the Defendant be released to his parents' residence—the *same* residence where he was living when he made the threats in question.  Indeed, many of the threatening videos the Defendant posted to his TikTok account were taken from *within* the home he shared with his parents.  Furthermore, two of the victims named in the Indictment are the Defendant's immediate neighbors.  Victim 5, in particular, lives less than one hundred feet from the Defendant's house.  Even if Pretrial Services' location monitoring technology is precise enough to differentiate between the Defendant's house and his neighbors' houses, there would not be sufficient time for law enforcement to respond if the Defendant decides to act upon his threats against Victim 1 or 5.  There is also no way for Pretrial Services to determine whether the Defendant is accessing prohibited internet-capable devices or building a bomb within the home.

The Defendants' parents, however well-intentioned they may be, cannot be relied upon to supervise him to the degree necessary to ensure he is not a danger to others.  Although the Defendant now reports having a close relationship with his father, there is clearly a history of estrangement between them and a risk that he will simply choose not to comply with his parents' supervision.  And based on his parents' conflicting statements about the Defendant's mental health issues to the FBI and the Court, they appear to be in denial about the extent of the problem and unwilling or unable to confront it.  More troubling still, as discussed above, there is a recorded jail call in which the Defendant's father appeared to coach the Defendant to lie to the Court about his compliance with his mental health treatment.  The government has no doubt that the Defendant's parents love their son and want the best for him, but based on this record, they cannot be trusted to be truthful with the Court if there are problems with their son's compliance with the conditions of release.

For all these reasons, the Government respectfully submits that the December 23, 2025, Release Order should be revoked and the Defendant should be detained pending trial.

**MOTION TO EXTEND THE STAY OF THE RELEASE ORDER**

In consideration of the government's pending motion for review and revocation of the release order, the United States requests that the Court extend the stay of the December 23, 2025 Release Order until further order by this Court, including whatever briefing and hearing schedules the Court may set.

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). A court considers four factors in determining whether to stay an appeal: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

A continued stay of the release order is appropriate in this case. With respect to the first prong, the evidence demonstrates that the Defendant poses an extreme danger to the community and a serious risk of flight and/or obstruction.

With respect to the second prong, the government would be irreparably injured by the absence of a stay. The Defendant would be released to the same home where he committed the threats in question, in a location yards away from the two of the victims in the case. Furthermore, if the stay is not granted, it may hamper the ability of the government to secure the Defendant's presence for a future hearing on the requested appeal.

With respect to the third prong, there would be little prejudice to the Defendant from this request. The Release Order has already been stayed by nearly a week to allow Pretrial Services to conduct the necessary home visit and ensure that the conditions of release have been met. A short additional stay to permit review by this Court will cause little additional harm to the Defendant.

Finally, with respect to the fourth prong, the public interest favors extending the stay to allow for a thorough review by this Court of the Release Order. There is a clear public interest in preventing a possible catastrophic terrorist attack.

Accordingly, the *Nken* factors demonstrate that a stay is warranted and appropriate in this case. For the foregoing reasons, the government requests that the Court exercise its discretion and grant the Government's motion to stay pending further proceedings.

<u>**CONCLUSION**</u>

For these reasons, the government respectfully moves pursuant to 18 U.S.C. § 3145(a)(1), for *de novo* review and revocation of the December 23, 2025 Release Order issued in this case, and further moves to stay the Release Order pending review by this District Court.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By: _____/s/_____
Christina A. Hoffman
Assistant United States Attorney

36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
410-209-4800
Christina.Hoffman@usdoj.gov

20

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 28, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

_____/s/_____
Christina A. Hoffman
Assistant United States Attorney